812 F.2d 1400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHESAPEAKE AND POTOMAC TELEPHONE CO., INC., Plaintiff
Peltor, Inc., Appellant,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Appellee.
 No. 86-3972.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 12, 1982.
Decided Feb. 9, 1987.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (C/A No. 85-256-N).
 Robert J. Aamoth (David Machanic, Richard M. Singer, Pierson, Ball & Dowd on brief) for appellant.
 Bradfute W. Davenport, Jr. (David G. Shuford, Mays & Valentine on brief) for appellee American telephone and Telegraph Company.
 Richard J. Beaver, Pender & Coward on brief, for appellee Chesapeake & Potomac Telephone Company, Inc.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal arises from an action brought by Chesapeake & Potomac Telephone Company, Inc. (C & P) against appellant, Peltor, Inc., to collect $20,640.58 in unpaid telephone bills. On appeal, Peltor contends that the district court committed reversible error in directing a verdict on its third-party claim (erroneously called a counterclaim below) against the appellee, American Telephone and Telegraph Company (AT & T). We affirm.
 
 I.
 
 2
 Peltor, Inc., a Texas corporation, was formed in 1983 to sell magazine subscriptions by telephone. In order to implement its marketing technique, Peltor utilized both foreign exchange long-distance telephone service (FX) and wide area communication service (WATS) provided by AT & T. AT & T's provision of WATS and FX service is governed by Federal Communications Commission Tariffs 259 and 260. Both tariffs contain a provision that limits AT & T's liability to cases involving its "willful misconduct." The tariffs also authorize AT & T to disconnect both WATS and FX service for a customer's "non-payment of any sum due the telephone company" upon "written notice."
 
 
 3
 In the early part of 1984, a billing dispute arose between Peltor and AT & T's billing agent, C & P, as to the WATS lines. This dispute ultimately resulted in the disconnection of Peltor's WATS lines in July of 1984. Peltor claimed that it was entitled to certain credits for phone calls made to the Virginia suburbs of Washington, D. C. on Peltor's Washington WATS lines. It was Peltor's position that $1,817.54 worth of such calls were billed at incorrect rates. Peltor, however, elected not to pay its entire WATS bill for several months. The unpaid bills through the date of disconnection totaled $20,640.58 of which only $1,817.54 was legitimately in dispute.
 
 
 4
 In August of 1984, AT & T advised Peltor, by telephone, that Peltor's existing FX service and its pending FX orders were in jeopardy due to the continued WATS delinquency. This call was followed by a letter of termination dated August 13, 1984, which was sent by certified mail, return receipt requested, at Peltor's Norfolk, Virginia address. Despite at least two attempts by the post office to deliver the letter, it was returned to AT & T "unclaimed." In October of 1984, AT & T disconnected the FX lines and cancelled its pending FX orders upon the non-payment of Peltor's WATS bills.
 
 
 5
 C & P filed suit in the Circuit Court for the City of Norfolk, Virginia to collect $20,640.58 in unpaid telephone bills. Peltor then removed the action to the United States District Court and filed a counterclaim and a third-party claim against AT & T alleging tortious misconduct. A twoday trial commenced February 10, 1986. At the close of all the evidence, the district court granted C & P's motion for a directed verdict on its claim for $20,640.58. The court also granted AT & T's motion for a directed verdict with respect to Peltor's third-party claim as well as to AT & T's collection of $6,710.68 on the outstanding FX bill.
 
 II.
 
 6
 Peltor now claims that the district court committed reversible error in directing a verdict on its third-party claim against AT & T. First, Peltor contends that there was substantial evidence of willful misconduct in that AT & T's termination was without just cause and that Peltor had not received written notice. Second, Peltor argues that the district court improperly excluded proffered expert testimony on Peltor's lost profits.
 
 
 7
 Under Federal Communications Commission Tariffs 259 and 260, that govern the relationship between AT & T and Peltor, AT & T is liable only for its "willful misconduct," requiring a showing of a present consciousness of wrongdoing. See, e.g., Pilot Industries v. Southern Bell Telephone and Telegraph Company, 495 F. Supp. 356, 362 (D.S.C. 1979). Here, the evidence clearly indicates that AT & T's agents construed the applicable tariffs to authorize termination of FX service for non-payment of WATS and that such tariff interpretation was confirmed by AT & T's legal staff and headquarters. Peltor, for its part, presented no evidence whatsoever that AT & T had a present consciousness of wrongdoing in terminating its FX service.
 
 
 8
 Peltor's contention that it had not received the required written notice of termination is likewise without merit. The evidence adduced at trial was consistent and uncontradicted that written notice was sent by registered mail to Peltor at its business address--the address to which all other bills and notices had been sent by AT & T and C & P. The postal authorities made two attempts to obtain acceptance of the letter by Peltor but were unsuccessful and ultimately returned the letter to AT & T. Peltor was unable to explain its failure to claim the letter. From this evidence, we find that AT & T substantially complied with the requirement of written notice of termination. Notice properly addressed, registered and mailed to a place designated by the addressee for similar communications is deemed effective and received, even though unclaimed and unread. See, e.g., Basile v. American Filter Service, Inc., 340 S.E.2d 800, 802 (Va. 1986). Further, there was a strong inference at trial that Peltor received oral notice of the impending termination.
 
 
 9
 Since we agree with the trial court that Peltor offered no evidence to suggest willful misconduct on the part of AT & T, and that AT & T substantially complied with the requirement of written notice so that such notice is deemed effective and received, we affirm the district court's judgment.
 
 
 10
 Because Peltor has failed to show any liability on the part of AT & T, the issues relating to damages, raised by Peltor, are moot and must be dismissed.
 
 
 11
 AFFIRMED.